**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

NEOPART TRANSIT, LLC,                          :
       Plaintiff,                              :          CIVIL ACTION
                      :          No. 16-3103
           v.                              :

MANAGEMENT CONSULTING,                 :
INC., JESHUA SMITH AND
ROBERT MONTGOMERY,
                            :
       Defendants.                             :

**February  23, 2017**                                    **Anita B. Brody, J.**

<u>**Memorandum**</u>

      Plaintiff Neopart Transit, LLC ("Neopart") brings suit against Management Consulting, Inc. ("Mancon") as well as two individual defendants, Jeshua Smith and Robert Montgomery (the "Individual Defendants"). Neopart makes eleven separate allegations in its Complaint, sounding in both tort and contract, including Misappropriation of Trade Secrets, violation of the Defend Trade Secrets Act, Unfair Competition, Breach of Contract, Conversion, and Intentional Infliction with Prospective Business Advantage. Mancon and the Individual Defendants move to dismiss this suit for lack of personal jurisdiction over the Individual Defendants, as well as improper venue, and failure to state a claim on which relief can be granted. I exercise jurisdiction over this dispute pursuant to federal question jurisdiction, 28 U.S.C. § 1331, and supplemental jurisdiction, 28 U.S.C. § 1367.

**I.       BACKGROUND**

      Plaintiff Neopart and Defendant Mancon are competitors in the parts management and supply chain services market. Neopart deals primarily with transit authorities and bus

manufacturers to provide bus parts and parts management services. Mancon's line of business is broader—they provide a wide array of services including staffing and industrial products, as well as transit parts management. Neopart is a Delaware limited liability company with its principal place of business in Sinking Springs, Pennsylvania.[1] Undisputed Facts ¶ 1, Joint Statement as to Undisputed and Disputed Facts Relevant to Personal Jurisdiction and Venue ("JSF"), ECF No. 60. Mancon is a Virginia corporation with its principal place of business in Virginia Beach, Virginia. Undisputed Facts ¶ 5, JSF.

From 2010 until 2015, Neopart provided parts management services for transit buses at the Rochester-Genesee Regional Transport Authority ("RGRTA") in Rochester, New York. Undisputed Facts ¶ 3, JSF. The RGRTA is a public benefit corporation of the State of New York. N.Y. Pub. Auth. Law § 1299-dd. Neopart provided these services to the RGRTA pursuant to a Parts Management Services Agreement dated February 12, 2010. Undisputed Facts ¶ 3, JSF. To effectuate performance of this contract, Neopart hired several individuals to carry out work at the RGRTA, including the Individual Defendants Jeshua Smith and Robert Montgomery.[2] Smith and Montgomery were already working at the RGRTA facility, although as employees of NAPA Auto Parts, the previous owner of the parts management service contract. Defs.' Disputed Facts ¶ 2-3, JSF. They are both residents of New York. Undisputed Facts ¶ 9, JSF.

Although Pennsylvania personnel participated in the recruitment and hiring process, Neopart interviewed and hired Smith and Montgomery in New York for employment in New York. Undisputed Facts ¶ 10, JSF. As a condition of their employment, both Individual

---

[1]     In the Complaint, the principal place of business for Neopart, LLC is listed as "Honey Brook, Pennsylvania." Compl. ¶ 1, ECF No. 1. In the parties' Joint Statement as to Undisputed and Disputed Facts, the principal place of business for Neopart Transit, LLC is listed as "Sinking Springs, Pennsylvania." JSF ¶ 1, ECF No. 60. Both locations are in the Eastern District of Pennsylvania. References throughout comport with the Complaint, and therefore refer to Honey Brook, Pennsylvania.

[2]     Neopart originally brought suit against individuals Anthony J. Kozak, Anthony J. Rotunno, Rick L. Tobey, Jason L. Holmes, David R. Hutchinson and Randy L. Campanaro. Those Defendants were voluntarily dismissed via a joint stipulation on November 16, 2016. ECF No. 37.

Defendants signed Confidentiality Agreements. Compl. ¶ 42-43, ECF No. 1. These agreements did not contain choice-of-law or forum selection provisions. Neither Smith nor Montgomery signed employment agreements. Although neither Individual Defendant was ever assigned to work outside of New York, both attended a one-day training session in Honey Brook, Pennsylvania in March 2011.

In December 2014, the RGRTA decided to seek new bids for its parts management contract. It issued a request for proposals to which both Neopart and Mancon, among others, submitted bids. Undisputed Facts ¶ 7, JSF. On April 28, 2015, Mancon was awarded the RGRTA contract. Compl. ¶ 25. Neopart claims that Mancon, which allegedly had never provided parts management services for transit buses before, colluded with New Flyer, a transit bus parts distributor, to undermine Neopart's bid and secure the contract for itself. Compl. ¶ 20-24. Neopart claims that Mancon's request for proposal to the RGRTA required the use of confidential information and trade secrets that belonged to Neopart. Compl. ¶ 33. These trade secrets are "Neopart's methods of identifying unique supplier that provide parts for transit buses; its pricing arrangements with suppliers; its methods of storeroom operations; the identities and compensation or employees; and its unique inventory management." Compl. ¶ 26. These alleged trade secrets were created and stored at Neopart's headquarters in Pennsylvania. Pl.'s Resp. Mot. Dismiss 12, ECF No. 27.

As servicers of the RGRTA parts management contract had done in the past, Mancon sought to hire employees who already worked at the RGRTA. On May 22, 2015, in the midst of this turnover process, Neopart alleges that Mancon obtained copies of Neopart's trade secrets from the RGRTA. Compl. ¶ 36. Neopart claims that on June 17 and June 22, 2015, Mancon requested and Montgomery and Smith provided access to Neopart's trade secrets and other

confidential information. Compl. ¶ 44-51. Neopart alleges that these requests were sent by Mancon to the personal email addresses of Smith and Montgomery. Neopart also alleges that on July 7, 2015, Montgomery provided Mancon with a credit application for one of Neopart's suppliers, in violation of his Confidentiality Agreement. Compl. ¶ 50. Further, in Montgomery's final days of employment with Neopart, Neopart alleges that he downloaded email files and other documents to a thumb drive and gave it to Robert Whitley, a Mancon executive. Pl.'s Disputed Facts ¶ 15, JSF; Montgomery Dep. 80:17-81:20; 109:2-10. Neopart claims that all of this occurred while Montgomery and Smith were still employees of Neopart. Compl. ¶ 51. On August 12, 2015, Montgomery and Smith left their positions with Neopart and became employees of Mancon. Compl. ¶ 51.

On June 17, 2016, Neopart filed a Complaint in this Court against Mancon and eight individuals. ECF No. 1.  On July 13, 2016, Mancon and the eight individuals moved to dismiss Neopart's Complaint in its entirety. ECF No. 15. On November 16, 2016, the parties voluntarily dismissed six of the individuals named in the Complaint, leaving only Jeshua Smith and Robert Montgomery as individual defendants. ECF No. 37. Neopart now asserts eleven claims against Mancon and the Individual Defendants, separately and collectively: (1) Misappropriation of Trade Secrets in violation of the Pennsylvania Uniform Trade Secrets Act, 12 Pa.C.S. §5301, *et seq*., ("PUTSA"), as to all Defendants; (2) Violation of the Defend Trade Secrets Act of 2016, 18 U.S.C. §1836, as to all Defendants; (3) Unfair Competition as to Mancon; (4) Breach of Contract as to the Individual Defendants; (5) Unjust Enrichment as to all Defendants; (6) Breach of Fiduciary Duty as to the Individual Defendants; (7) Aiding and Abetting the Breach of Fiduciary Duty as to all Defendants; (8) Conversion as to all Defendants; (9) Civil Conspiracy as to all Defendants; (10) Intentional Interference with Prospective Business Advantage as to all

4

Defendants; and (11) Preliminary and Permanent Injunction pursuant to 12 Pa.C.S. § 5303 as to all Defendants. ECF No 1.

## II.    DISCUSSION

Mancon moves to dismiss this action primarily on two grounds: lack of personal jurisdiction over the Individual Defendants pursuant to Fed. R. Civ. P. 12(b)(2), and improper venue pursuant to Fed. R. Civ. P. 12(b)(3).[3] In the alternative, Mancon moves to dismiss several claims pursuant to Fed. R. Civ. P. 12(b)(6). Mancon asserts that New York law applies to this action and it moves to dismiss Counts I, VIII and XI as not cognizable under New York law. Further in the alternative, Mancon moves to dismiss Counts V, VI, VII and IX as not cognizable under Pennsylvania law, in the event Pennsylvania law applies to this action.

### A.  PERSONAL JURISDICTION OVER THE INDIVIDUAL DEFENDANTS

According to Fed. R. Civ. P. 12(b)(2), a court must grant a motion to dismiss if it lacks

---

[3]       Defendants also move to dismiss on two other grounds: lack of standing pursuant to Fed. R. Civ. P. 12(b)(1), and failure to join a necessary party pursuant to Fed. R. Civ. P. 12(b)(7). Both are without merit.

   Defendants argue that Neopart Transit, which was not incorporated until February 25, 2016, lacks Article III standing because Neopart Transit cannot prove an injury in fact for alleged harms that took place before it came into existence. Defendants argue that the injuries alleged in the Complaint inure to Neopart, LLC, the relevant entity at the time the events in the Complaint took place, not to Neopart Transit. When standing is attacked "facial[ly] . . . the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000). Here, Plaintiff has alleged that Neopart Transit was assigned the claims against the Defendants through an Assignment and Assumption Agreement dated March 11, 2016. Pl.'s Resp. to Defs.' Mot. Dismiss 13; Boade Aff. ¶¶ 2-4; Assignment and Assumption Agreement, attached as Ex. 5 to Boade Aff. Pennsylvania has "long permitted causes of action to be assigned," and an "assignee stands in the shoes of the assignor." *Hedlund Mfg. Co. v. Weiser, Stapler & Spivak*, 517 Pa. 522, 525 (1988). Taking these allegations in the light most favorable to Plaintiff, Neopart Transit has sufficiently alleged Article III standing.

   Defendants' Motion to Dismiss on the grounds of failure to join a necessary party fails for the same reasons. Defendants argue that Plaintiff's failure to join Neopart, LLC warrants dismissal of this action. A court must first determine if a party is necessary before determining if dismissal is warranted for failure to join that party. *Gen. Refractories Co. v. First State Ins. Co.*, 500 F.3d 306, 312 (3d Cir. 2007). Under Fed. R. Civ. P. 19, an entity is necessary and must be joined, if feasible, if that entity's absence "may leave an existing party subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations." Here, Neopart, LLC's absence will not expose Defendants to a substantial risk of incurring multiple or inconsistent obligations. Plaintiffs allege that Neopart, LLC has "no remaining right or interest in these claims against Defendants," pursuant to the agreement referenced above. Pl.'s Resp. to Defs.' Mot. Dismiss 13, ECF No. 27; Boade Aff. ¶¶ 2-4; Assignment and Assumption Agreement, attached as Ex. 5 to Boade Aff. Defendants face no risk of being held liable by Neopart, LLC because the agreement obviates Neopart, LLC's ability to bring a claim against any of the Defendants. Neopart, LLC is therefore not a necessary party, and this case cannot be dismissed on those grounds.

personal jurisdiction. "To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff bears the burden of establishing the court's jurisdiction over the moving defendants." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004). When a court restricts its review of the motion to affidavits and written evidence and does not hold an evidentiary hearing, the plaintiff need only make a prima facie showing that jurisdiction is proper. *Id.*; *see also Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 142 n. 1 (3d Cir. 1992). At this stage, a plaintiff is entitled to have disputed facts construed in his or her favor. *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002) (citation omitted).[4] Plaintiff, however, must support allegations with affidavits or other competent evidence. *See Dayhoff Inc. v. H.J. Heinz Co*., 86 F.3d 1287, 1302 (3d Cir. 1996).

A federal court sitting in Pennsylvania may exercise jurisdiction over nonresident defendants to the extent provided under Pennsylvania law.  *See* Fed. R. Civ. P. 4(k)(1). Pennsylvania's long-arm statute is co-extensive with the due process requirements of the United States Constitution.  *See* 42 Pa. C.S.A. § 5322(b); *Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1221 (3d Cir. 1992).  Thus, a court may exercise personal jurisdiction over a defendant as long as the defendant has "certain minimum contacts with . . . [Pennsylvania] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007) (internal quotations and citation omitted). Analysis of personal jurisdiction requires a court to "examine the relationship among the [defendants], the forum, and the litigation." *Miller Yacht*

---

[4]    A plaintiff bears the ultimate burden of proving personal jurisdiction, whether at an evidentiary hearing or at trial, by a preponderance of the evidence. *Carteret Savings Bank, FA v. Shushan*, 954 F.2d 141, 142 n. 1 (3d Cir. 1992). Mancon did not request an evidentiary hearing in this matter, Tr. Pretrial Conference, January 23, 2016, but if jurisdiction is later contested, Plaintiffs must show the existence of minimum contacts by a preponderance of the evidence. *See O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007).

*Sales, Inc.*, 384 F.3d at 96 (internal quotations and citation omitted).

A court may have either general or specific personal jurisdiction over a nonresident defendant. *Dollar Sav. Bank v. First Sec. Bank of Utah, N.A.*, 746 F.2d 208, 211 (3d Cir. 1984). General personal jurisdiction exists only when a defendant's contacts with a forum are "so continuous and systematic as to render [it] essentially at home in the forum State." *Daimler AG v. Bauman*, 134 S. Ct. 746, 761 (2014) (quotations and citation omitted). Neopart concedes that the Individual Defendants are not "at home" in Pennsylvania and therefore are not subject to general personal jurisdiction.  Pl.'s Resp. Mot. Dismiss 6. The only question, therefore, is whether this Court has specific jurisdiction over the Individual Defendants.

Specific jurisdiction exists "when the claim is related to or arises out of the defendant's contacts with the forum." *Dollar Sav. Bank*, 746 F.2d at 211. Usually, a court determines specific jurisdiction on a claim-by-claim basis. *O'Connor*, 496 F.3d at 318. Claim-specific analysis is appropriate for analyzing a case with both contract and tort claims because "there are different considerations in analyzing jurisdiction over contract claims and over certain tort claims . . . ." *Remick v. Manfredy*, 238 F.3d 248, 255–56 (3d Cir. 2001). However, claim-specific analysis may not be necessary "for certain factually overlapping claims." *O'Connor*, 496 F.3d at 318 n. 3; *see also Bhd. of Locomotive Eng'rs & Trainmen v. United Transp. Union*, 413 F. Supp. 2d 410, 417 (E.D. Pa. 2005) ("[W]here the considerations in analyzing jurisdiction do not differ between particular claims, a claim specific analysis is not necessary."). Because Neopart's statutory, contract and tort claims all stem from the same conduct, the alleged misappropriation of confidential information and trade secrets, a claim-specific analysis is not necessary. *See* Defs.' Resp. to Supp. Br. on Jurisdiction and Venue 5, ECF No. 46 ("Here, Neopart's claims all arise from the same factual allegations.").

The Third Circuit has outlined a three-prong test for determining the existence of specific personal jurisdiction. Specific personal jurisdiction exists when: (1) the defendant "purposefully directed [its] activities" at the forum; (2) the litigation "arise[s] out of or relate[s] to" at least one of the defendant's activities in Pennsylvania; and (3) the exercise of jurisdiction comports with notions of 'fair play and substantial justice.'" *O'Connor*, 496 F.3d at 317 (*quoting Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)). In intentional tort cases, if a court finds jurisdiction lacking after applying the preceding test, courts employ the *Calder v. Jones* effects test, which requires that: (1) a nonresident defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum; and (3) the defendant "expressly aimed" its tortious conduct at the forum. 465 U.S. 783, 789 (1984).

The Individual Defendants Montgomery and Smith argue that they are each nonresidents of Pennsylvania and that they lack sufficient contacts with Pennsylvania to support the exercise of specific personal jurisdiction over them. Neopart contends, however, that specific personal jurisdiction exists in Pennsylvania over the Individual Defendants because the claims arise from their employment with a Pennsylvania company. I find that Neopart has alleged sufficient contacts to support the exercise of personal jurisdiction.

**1. Purposeful Availment**

The threshold inquiry is whether the defendant "purposefully avails itself of the privilege of conducting activities within the forum [s]tate." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). Physical presence in the forum is not required, but a party must "deliberate[ly] target[]" the forum. *O'Connor*, 496 F.3d at 317 (internal quotations omitted). While "informational communications," such as intermittent phone calls or letters in furtherance of a contract, are insufficient on their own to establish jurisdiction, *Vetrotex Certainteed Corp. v. Consolidated*

*Fiber Glass Prods., Co.*, 75 F.3d 147, 152 (3d Cir. 1996) (citation omitted), "mail and telephone communications sent by the defendant into the forum may count toward the minimum contacts that support jurisdiction." *Grand Entm't Group, Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 482 (3d Cir. 1993). In assessing jurisdiction for breach of contract claims, a court must consider "the totality of the circumstances, including . . . the parties' actual course of dealing." *Remick*, 238 F.3d at 256; *see also Burger King*, 471 U.S. at 479 ("[C]ontemplated future consequences [of the contract] . . . must be evaluated in determining whether the defendant purposefully established minimum contacts with the forum."). The Supreme Court has "emphasized the need for a highly realistic approach that recognizes that a contract is ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction." *Burger King*, 471 U.S. at 479 (quotations omitted).

In analyzing "purposeful availment" in suits by employers against nonresident employees, courts in this Circuit have found jurisdiction proper when "all of the essential functions that allowed [the nonresident employee] to earn a living were channeled through Pennsylvania." *Numeric Analytics, LLC v. McCabe*, 161 F. Supp. 3d 348, 355 (E.D. Pa. 2016). These "essential functions" include "payroll, benefits . . . [m]edical coverage, medical benefits, and retirement plans." *Id.* Other Circuits have found an employee's contacts with a forum state "purposeful" even when such communications are required by the employer. *Equifax Servs., Inc. v. Hitz*, 905 F.2d 1355, 1359 (10th Cir. 1990) ("[W]hen forum contacts are a natural result of a contractual relationship, it indicates purposeful affiliation with the forum through an interstate contractual relationship."); *see also Burger King*, 471 U.S. at 479-81. Furthermore, with respect to claims of misappropriation of trade secret claims against former employees, courts have found that purposeful availment is established when the former employee learns of trade secrets only as

a consequence of his or her employment. *See Thermal Components Co. v. Griffith*, 98 F. Supp. 2d 1224, 1229 (D. Kan. 2000) ("By misappropriating the trade secrets to which the individual defendants became privy only as a result of their employment by the plaintiff, and by using that information to interfere with [plaintiff's] pre-existing and future contractual relations . . . the individual defendants' previous employment relationship with[ a forum state] resident establishes the requisite contacts with the forum state.").

Although this is a close case, I find that the Individual Defendants have purposefully availed themselves of conducting activities in Pennsylvania. They were indeed interviewed in New York, hired in New York, and signed their Confidentiality Agreements in New York, but they nonetheless were employed by and interacted with a Pennsylvania corporation on a near daily basis. First, communicating with Pennsylvania was a necessary component of the Individual Defendants' employment. Montgomery's immediate supervisor, Paul Delong, was located in Pennsylvania and the two exchanged emails approximately three times a week. Montgomery Dep. 21:23-22:9. Montgomery regularly contacted the Neopart facility in Pennsylvania for questions related to parts, emergency orders and other issues related to RGRTA parts management. Montgomery Dep. 22:14-22. Performing Montgomery's job necessitated contact with Pennsylvania because approximately 30 to 50 percent of the parts supplied to the RGRTA project came from Neopart's facility in Honey Brook, PA. Boade Aff. ¶ 8, attached as Ex. A to Pl.'s Resp. Mot. Dismiss, ECF No. 27 ("Boade Aff."). The email server by which each of the Individual Defendants conducted their job requirements was located in Pennsylvania. Boade Aff. ¶ 9. Over a two-year period of time, Neopart alleges that Montgomery and Smith sent, received or were copied on more than 10,000 emails with Neopart personnel in

Pennsylvania.[5]

Also, the Individual Defendant's very ability to earn a living was channeled through Pennsylvania. At the time of hire, Neopart alleges that Smith and Montgomery completed paperwork that documented the employee's connection to Honey Brook. Boade Aff. ¶ 9. Neopart alleges that both Individual Defendants received paychecks from Pennsylvania, and each of their yearly tax documents listed Honeybrook, Pennsylvania as their employer's address. Boade Aff. ¶ 7; 2014 W-2 Forms, attached as Ex. 7-3 to Boade Aff. Both Individual Defendants visited their employer's home office in Pennsylvania in 2011. When Montgomery received a promotion to Parts Manager in June 2012, his offer letter listed "Honeybrook, Pennsylvania" as his employer's address.  Boade Aff ¶ 9. Montgomery exchanged emails with human resources personnel in Pennsylvania on a regular basis, and he interacted with Human Resources personnel in Pennsylvania for all of his vacation and benefits. Montgomery Dep. 21:4-22.  Smith as well made numerous, regular, sometimes daily phone calls to Honeybrook, PA. Boade Aff. ¶ 8.

Finally, Neopart contends that the confidential information and trade secrets allegedly misappropriated by the Individual Defendants were created and prepared in Pennsylvania. Pl.'s Resp. Mot. Dismiss 12; Boade Aff. ¶ 12. Neopart alleges that the thumb drive Montgomery gave to Mancon executive Randy Whitman contained proprietary information and trade secrets that were downloaded from a computer connected to Neopart's computer servers in Pennsylvania. Pl.'s Disputed Facts ¶ 15, JSF.

The Individual Defendants' contacts with Pennsylvania satisfy the purposeful availment requirement. Although the Individual Defendants were hired in New York to perform work in

---

[5]     Defendants dispute this number because it includes emails sent and received by Anthony Kozak, who is no longer a party to this suit, and because the number may include double-counted emails. Defs.' Disputed Facts ¶ 15-17, JSF, ECF No. 60. The exact number of emails does not have dispositive jurisdictional significance, however. It is beyond dispute that both Individual Defendants contacted personnel in Pennsylvania hundreds, if not thousands of times.

New York, they knew they were entering into a relationship with a Pennsylvania company. Amenability to suit in that jurisdiction is an "anticipated future consequence" of such a relationship. *Burger King*, 471 U.S. at 479. The contacts between the Individual Defendants and Neopart personnel in Pennsylvania were not merely "informational communications" but more "entangling contacts" that occurred on a near daily basis. *Remick*, 238 F.3d at 256. In order to both perform their jobs and earn a living, both Individual Defendants made repeated contacts with Pennsylvania. The realities of modern day electronic commerce, in which employees can perform their jobs remotely, call for a "highly realistic approach" to assessing purposeful availment in the personal jurisdiction context. When, as here, "all of the essential functions" that allowed Smith and Montgomery "to earn a living" and perform their jobs "were channeled through Pennsylvania," *Numeric Analytics, LLC*, 161 F. Supp. 3d at 355, I find that both Individual Defendants have made purposeful contact with this state.

### 2. Relatedness

Once purposeful contact with the forum is identified, the analysis proceeds to the second step of the specific personal jurisdiction inquiry, the relatedness requirement. A plaintiff's claims must "arise out of or relate to" a defendant's forum contacts. For claims to "arise out of or relate to" a defendant's contacts, the "causal connection can be somewhat looser than the tort concept of proximate causation, but it must nonetheless be intimate enough to keep the quid pro quo proportional and personal jurisdiction reasonably foreseeable." *O'Connor*, 496 F.3d at 323 (citation omitted). The inquiry is "necessarily fact-sensitive." *Id.* "The animating principle behind the relatedness requirement is the notion of a tacit quid pro quo that makes litigation in the forum reasonably foreseeable." *Id.* at 322.

Neopart has satisfied the relatedness requirement. Neopart's claims are inherent to their

employment relationship with the Individual Defendants. As explained above, it was reasonably foreseeable that, upon agreeing to employment with a Pennsylvania company and interacting with that company each day, Smith and Montgomery could be subject to suit in Pennsylvania. Courts in this Circuit have ruled that an action against a nonresident employee for breach of an employment-related agreement with a Pennsylvania company "certainly arise[s] out of and relate[s] to [the employee's] contacts with Pennsylvania." *Numeric Analytics, LLC*, 161 F. Supp. 3d at 355. What's more, Smith and Montgomery only had access to Neopart's trade secrets as a consequence of their employment. Smith and Montgomery became privy to Neopart's methods of identifying unique suppliers, pricing arrangements, and inventory management methods via emails and telephone calls to Pennsylvania and access to Pennsylvania computer servers—in other words, as a direct result of their contacts with this state. *Thermal Components Co.*, 98 F. Supp. 2d at 1229. Neopart's claims arise from their employment relationship with the Individual Defendants and therefore the relatedness requirement is satisfied.

### 3. Fair Play and Substantial Justice

Finally, the exercise of jurisdiction must also "comport with fair play and substantial justice." *Burger King*, 471 U.S. at 476 (internal quotations omitted). The existence of minimum contacts makes exercising jurisdiction "presumptively constitutional, and the defendant must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *O'Connor*, 496 F.3d at 324 (internal quotations and citation omitted). When balancing jurisdictional reasonableness, courts should consider "the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, [and] the interstate judicial system's interest in obtaining the most efficient resolution of controversies." *Burger King*, 471 U.S. at 477

(quotation marks omitted).

Because Neopart has established that minimum contacts exist between Pennsylvania and the Individual Defendants, the exercise of personal jurisdiction is "presumptively constitutional," and Defendants must demonstrate a compelling reason that would render jurisdiction "unreasonable." *See O'Connor*, 496 F.3d at 324. Defendants have made no such showing. Defendants make only the conclusory statement that "[w]ithout question, it would be a gross violation of 'fair play and substantial justice' for these New York residents to be haled into court in Pennsylvania . . . ." Mot. Dismiss 8. Yet, the Defendants do not fully discuss this final jurisdictional requirement nor provide any reason why the exercise of jurisdiction in Pennsylvania would be unreasonable or burdensome.

While it is indeed a burden to travel to Pennsylvania from New York, that burden is lessened by the geographic proximity of the two neighboring states. *See O'Connor*, 496 F.3d at 324 (considering the distance between the two fora in assessing reasonableness). The Individual Defendants have also already completed their depositions. While the Confidentiality Agreements at issue do not select Pennsylvania law, the trade secrets allegedly misappropriated were created in Pennsylvania, and therefore this state has the greatest interest in adjudicating the dispute. *See* Section B, *infra*. Any burden on the Defendants is also weighed against the Plaintiff's interest in obtaining convenient relief in their chosen forum. I find that the exercise of personal jurisdiction over the Individual Defendants is reasonable.[6]

---

[6]     Because I find that personal jurisdiction over the Individual Defendants for all claims is appropriate under the traditional test, I decline to apply the *Calder v. Jones* "effects test." The "effects test" is only necessary for intentional tort claims if minimum contacts are found to be insufficient under the traditional analysis. *Imo Industries, Inc. v. Kiekert AG*, 155 F.3d 254, 260 (3d Cir. 1998); *see also Leone v. Cataldo*, 574 F. Supp. 2d 471, 479 (E.D. Pa. 2008) (declining to apply "effects test" after jurisdiction was satisfied under the traditional test).

**B.  VENUE**

Mancon also moves to dismiss this action because it is in the wrong venue. According to

Fed. R. Civ. P. 12(b)(3), a court must grant a motion to dismiss if venue is improper. Generally,

when deciding a Rule 12(b)(3) venue motion, a court must accept as true the allegations in the

complaint, although the parties may submit affidavits to support their positions.  *Leone v.*

*Cataldo*, 574 F. Supp. 2d 471, 483–85 (E.D. Pa. 2008). The defendant bears the burden of

showing that venue is improper. *Myers v. American Dental Ass'n*, 695 F.2d 716, 724 (3d Cir.

1982). Although venue must generally be established for each cause of action asserted in the

complaint, there is an exception "where claims arise out of the same operative facts."

*Philadelphia Musical Soc., Local 77 v. Am. Fed'n of Musicians of U.S. & Canada*, 812 F. Supp.

509, 517 n. 3 (E.D. Pa. 1992). This doctrine, known as pendent venue, allows venue to be

sustained over a federal claim even if venue over pendent state law claims would not be proper.

*High River Ltd. P'ship v. Mylan Labs., Inc.*, 353 F. Supp. 2d 487, 493 (M.D. Pa. 2005).

"The test for determining venue is not the defendant's 'contacts' with a particular

district, but rather the location of those 'events or omissions giving rise to the claim' . . . ."

*Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994). According to 28

U.S.C. § 1391(a), venue is proper only in:

> (1) a judicial district where any defendant resides, if all defendants reside in the same
> State, (2) a judicial district in which a substantial part of the events or omissions giving
> rise to the claim occurred, or a substantial part of property that is the subject of the action
> is situated, or (3) a judicial district in which any defendant is subject to personal
> jurisdiction at the time the action is commenced, if there is no district in which the action
> may otherwise be brought.

Plaintiff asserts that venue is proper in the Eastern District of Pennsylvania because it is "a

judicial district in which . . .  a substantial part of property that is the subject of the action is

situated." 28 U.S.C. § 1391(a)(2).[7] Venue can be appropriate in more than one district. *Cottman*,
36 F.3d at 294. "The fact that substantial activities took place in district B does not disqualify
district A as proper venue as long as 'substantial' activities took place in A, too. Indeed, district
A should not be disqualified even if it is shown that the activities in district B were more
substantial, or even the most substantial. . . . If the selected district's contacts are 'substantial,' it
should make no difference that another's are more so, or the most so." *Leone*, 574 F. Supp. 2d at
483 (*quoting* David D. Siegal, Commentary on the 1988 and 1990 Revisions of Section 1391,
Subdivision (a), Clause (2), 28 U.S.C.A § 1391 (1993)).

To determine whether venue is proper, a court must examine the nature of the dispute.
*Cottman,* 36 F.3d at 295; *see also Uffner v. La Reunion Francaise*, 244 F.3d 38, 42 (1st Cir.
2001) (stating that a court deciding venue does "not [look] to a single 'triggering event'
prompting the action, but to the entire sequence of events underlying the claim."). Venue
determinations demand qualitative analysis, and are undertaken "by assessing the overall nature
of the plaintiff's claims and the nature of the specific events or omissions in the forum, and not
by simply adding up the number of contacts." *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d
408, 432 (2d Cir. 2005).

Although Neopart brings breach of contract and tort claims against the Individual
Defendants, this case, as pursued against all Defendants, is fundamentally about the
misappropriation of trade secrets. Neopart seeks to establish venue via U.S.C. § 1391(a)(2),
which dictates that venue lay in "a judicial district in which . . . a substantial part of property that
is the subject of the action is situated." The relevant inquiry is therefore: where is a trade secret
"situated?"

---

[7]     Venue cannot be established under § 1391(a)(1) because the defendants reside in two states, New York and
Virginia. Venue can also not be established under § 1391(a)(3) because this suit could have been brought in the
Northern District of New York.

Third Circuit precedent is clear that the "situs" of a trade secret is the state in which the intellectual property was created. *Horne v. Adolph Coors Co.*, 684 F.2d 255, 259 (3d Cir. 1982) ("[A] state trade secret . . . should be deemed to have [its] fictional situs at the residence of the owner."); *see also Cabot Corp. v. Niotan, Inc.*, No. 08-1691, 2011 WL 4625269, at *13 (E.D. Pa. Sept. 30, 2011) ("The law in this circuit is clear that the location of trade secrets is where plaintiff resides."); *accord Vital State Canada, Ltd. v. DreamPak, LLC*, 303 F. Supp. 2d 516, 520 (D.N.J. 2003).

Courts routinely recognize that "[u]nlike trademarks, which seem to have no real situs, trade secrets have a situs in their state of origin," and that this can be enough to establish proper venue in that state. *Harry Miller Co. v. Carr Chem*, 5 F. Supp. 2d 295, 298 (E.D. Pa. 1998); *Paul Green Sch. of Rock Music Franchising, LLC v. Rock Nation, LLC*, No. 08-4503, 2009 WL 129740, at *2 (E.D. Pa. Jan. 13, 2009); *but see Crayola, LLC v. Buckley*, 179 F. Supp. 3d 473, 479 (E.D. Pa. 2016) (finding that Pennsylvania was not the proper venue for a misappropriation in Arkansas of a trade secret created in Pennsylvania, in part because the Plaintiff did not bring a claim under the Pennsylvania Uniform Trade Secrets Act).[8]

Venue in a trade secret's state of origin is further bolstered because the injury is felt there. Although the place where an injury is felt is "generally insufficient," on its own, to establish venue, *Lannett Co. v. Asherman*, No. 13-2006, 2014 WL 716699, at *5 (E.D. Pa. Feb.

---

[8]         The court in *Crayola* casts doubt on those courts that have found venue proper for trade secret cases in the secret's state of origin, in part because decisions holding as much were promulgated before the Judicial Improvements Act of 1990, Pub. L. 101-650, 104 Stat. 5089. *Crayola* , 179 F. Supp. 3d at 479. That Act introduced the "substantial event or omission" requirement to ensure that cases are tried in "the place where things happened[.]" H.R. Rep. No. 101-734, at 23 (1990). The language change in the statute, however, has no bearing on this case. In this case, I need not find that "a substantial event or omission" has occurred in the Eastern District of Pennsylvania because Plaintiff does not seek to establish venue using that clause of § 1391(a)(2). Plaintiff instead relies on the second clause of § 1391(a)(2), which states that venue is proper where "*a substantial part of the property* that is the subject of the action is situated" (emphasis added). Third Circuit law is clear that trade secrets are situated, "substantial[ly]" or otherwise, in their state of origin, and the 1990 revision to the federal venue statute does not alter that rule.

24, 2014), the state of injury is not irrelevant for claims relating to intellectual property. *See Endless Pools, Inc. v. Wave Tec Pools, Inc.*, 362 F. Supp. 2d 578, 587 (E.D. Pa. 2005) (considering, in a motion to dismiss for improper venue for conduct that occurred out of state, that "if plaintiff's trademark is found to be infringed as alleged, the injury will largely be felt in Pennsylvania.").[9]

With respect to trade secrets, "[s]ince intellectual property cannot have a physical situs, the law of the state of residence of the person who initially developed and protected the [trade] secret appears to be the obvious starting point for its protection." *Paolino v. Channel Home Centers*, 668 F.2d 721, 724 n. 3 (3d Cir. 1981). The injury stemming from theft of trade secrets is primarily inured to the owner, in the jurisdiction in which he or she resides. *BP Chemicals Ltd. v. Formosa Chem. & Fibre Corp.*, 229 F.3d 254, 261 (3d Cir. 2000) (*citing Horne*, 684 F.2d at 259-60, for the proposition that "in a trade secret case, the injury occurs to the owner of the trade secret wherever he resides"); *Paolino*, 668 F.2d at 724 (stating that theft of a Pennsylvania trade secret "obviously would cause harm in Pennsylvania no matter where the misappropriation occurred.").

Although the trade secrets at issue in this case where allegedly misappropriated elsewhere,[10] the situs of those trade secrets is Pennsylvania. Neopart alleges that the trade secrets and confidential information at issue were created, developed, and stored in Pennsylvania. Pl.'s Resp. Mot. Dismiss 12; Boade Aff. ¶ 12. The venue statute plainly states that venue is proper in

---

[9]     While it is true that the "focus of [a] venue inquiry" in a trademark case is "the location where the unauthorized passing off takes place," and "[t]he district in which the infringed trademark was originally prepared or initiated is not determinative," the place of injury is not immaterial to venue analysis. *Cottman*, 36 F.3d at 294. In this matter, venue is proper in this District not only because the injury is felt here, but because the situs of the trade secret is here as well.

[10]     Where the alleged misappropriation took place is a matter of dispute. Neopart contents that "Mancon received and utilized Neopart's trade secrets and other confidential information at its principal place of business in Virginia." Pl.'s Resp. Mot. Dismiss 18. Mancon asserts that "the conduct causing the alleged injury occurred in New York." Mot. Dismiss 13.

the district where "a substantial part of property that is the subject of the action is situated,"

U.S.C. § 1391(a)(2), and the law of this Circuit holds that Neopart's trade secrets are situated in

Pennsylvania. Further, "no matter where the misappropriation occurred," the harm from the theft

of Neopart's Pennsylvania trade secrets is felt in Pennsylvania. *Paolino*, 668 F.2d at 724. I find

that venue is proper in the Eastern District of Pennsylvania.[11]

### C.  FAILURE TO STATE A CLAIM

In deciding a motion to dismiss under Rule 12(b)(6), a court must "accept all factual

allegations as true, construe the complaint in the light most favorable to the plaintiff, and

determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled

to relief." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation

marks omitted).

To survive dismissal, a complaint must allege facts sufficient to "raise a right to relief

above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Rather, "a complaint

must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible

on its face." *Id.* (internal quotation marks omitted).  "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Id.*

Mancon moves to dismiss several counts on the grounds that New York law applies to

this action. Mancon moves to dismiss Counts I and IX, Neopart's claims under the Pennsylvania

---

[11]     Because I find that venue is established with respect to Neopart's trade secret claims, venue is proper over
the entire suit because all Neopart's claims "arise out of the same operative facts." *Philadelphia Musical Soc., Local
77*, 812 F. Supp. at 517 n. 3.

Uniform Trade Secrets Act, because New York has not adopted the Uniform Trade Secrets Act. Mot. Dismiss 13. Mancon also moves to Dismiss Count VIII, Neopart's conversion claim, because, Mancon asserts, New York does not recognize a cause of action for conversion of intangible property. Mot. Dismiss 15. In the alternative, Mancon argues that should Pennsylvania law apply, Counts V, VI, VII and X, Neopart's intentional tort claims, should be dismissed against the Individual Defendants because they are subsumed in Count IV, the breach of contract claim, and therefore barred by the 'gist of the action doctrine.' Neopart responds that Pennsylvania law applies to this action, and that that the 'gist of the action doctrine' does not bar its tort claims. Pl.'s Resp. Mot. Dismiss 21.

To determine the applicable law, a court must conduct a choice-of-law analysis. "Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law." *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996). Choice-of-law rules are considered substantive law; therefore, a federal court looks to state law for choice-of-law rules. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). A federal court exercising federal question jurisdiction over a federal claim and supplemental jurisdiction over related state law claims applies the choice-of-law rules of the state of the forum. Kermit Roosevelt III, *Choice of Law in Federal Courts: From Erie and Klaxon to Cafa and Shady Grove*, 106 Nw. U. L. Rev. 1, 24 (2012) ("[F]ederal courts have to follow *Erie* when exercising supplemental jurisdiction . . . ."); *see also Rohm & Haas Co. v. Adco Chem. Co.*, 689 F.2d 424, 429 (3d Cir. 1982) ("[A] federal court whose jurisdiction over a state claim is based . . . on pendency to a federal claim . . . must apply the conflicts of law principles of the forum state."); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). Therefore,

Pennsylvania's choice-of-law rules control.[12]

Choice of law analysis is "issue-specific," and therefore Pennsylvania courts must conduct the analysis on a claim-by-claim basis. *Berg Chilling Sys., Inc. v. Hull Corp.*, 435 F.3d 455, 462 (3d Cir. 2006). For each relevant claim, Pennsylvania courts are to apply a three-step choice-of-law inquiry. *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 230 (3d Cir. 2007). First, the court should determine if there is an actual or real conflict between the laws of the jurisdictions at issue. *Id*. When there are "relevant differences" between the laws of the two states, then there is an actual conflict. *Id*. If an actual conflict arises, the court "must proceed to the second prong of the inquiry and determine if this is a true or false conflict." *Id.* at 232. "If there are relevant differences between the laws, then the court should examine the governmental policies underlying each law, and classify the conflict as a "true," "false," or an "unprovided-for" situation." *Id*. A "true conflict" arises only if "*both* jurisdictions' interests would be impaired by the application of the other's laws." *Id*. at 230.[13] If a "true conflict" exits, then the court proceeds to step three of the inquiry and must engage in a "deeper choice-of-law analysis" to determine which jurisdiction has the "greater interest in the application of its law." *Id.* (*citing Cipolla v.*

---

[12]    Diversity jurisdiction is not the basis of jurisdiction in this case, but that does not change the relevant choice-of-law analysis. Neopart, however, pleads diversity under 28 U.S.C § 1332 as the basis for subject matter jurisdiction. Compl. ¶ 11. Defendant does not challenge that assertion. Mot. Dismiss 10. However, Neopart does not plead sufficient information for this Court to conclude that complete diversity exists. As an LLC, Neopart's citizenship "is determined by the citizenship of each of its members." *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 418 (3d Cir. 2010). Neopart pleads that its sole member and 100% owner is Argosy Credit Partners Holdings, L.P. Compl. ¶ 1. As a partnership, Argosy Credit Partners Holdings "takes on the citizenship of each of its partners." *Id*. at 419. Neopart does not state the citizenship of each of the partners of Argosy Credit Partners, however, and therefore this Court is unable to exercise diversity jurisdiction over this matter.

    Nonetheless, this Court retains subject matter jurisdiction because Neopart has plead a federal cause of action under the Defend Trade Secrets Act. Compl. ¶ 66. The statute provides for original federal jurisdiction for a claim of trade secret misappropriation. 18 U.S.C. § 1836(b)(3)(C). This Court exercises "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a); *see generally* Peter J. Toren, *The Defend Trade Secrets Act*, 28 No. 7 Intell. Prop. & Tech. L.J. 3, 4 (2016). Despite Neopart's failure to explicitly plead federal question jurisdiction, "[i]mperfections in pleading style will not divest a federal court of jurisdiction where the complaint as a whole reveals a proper basis for jurisdiction." *Cook v. Winfrey*, 141 F.3d 322, 326 (7th Cir. 1998) (citation omitted).

[13]    An "unprovided-for" situation arises if neither state's interests would be impaired if its laws were not applied. *Hammersmith*, 480 F.3d at 230 n. 9.

*Shaposka,* 439 Pa. 563 (1970)).

A court should conduct a choice-of-law inquiry only where necessary. *Hammersmith*, 480 F.3d at 230. Here, the relevant jurisdictions at issue are Pennsylvania, the situs of Neopart's trade secrets and its principal place of business, and New York, the domicile of the individual Defendants and the site of the RGRTA. Mancon alleges that conflict of law issues arise with three groups of claims: Misappropriation of Trade Secrets (Counts I and IX), Conversion (Count VII) and Claims Governed by the 'Gist of the Action Doctrine' (Counts V, VI, VII and X). These groups are each considered in turn.[14]

### 1. Misappropriation of Trade Secret Claims (Counts I and IX)

#### a. Actual conflict

It must first be determined if there is an "actual conflict" between New York and Pennsylvania law on the issue of misappropriation of trade secrets. In Pennsylvania, misappropriation of trade secrets is governed by the Pennsylvania Uniform Trade Secrets Act, 12 Pa.C.S. §5301, *et seq*. Mancon points out that New York is one of only two states that has not adopted a version of the Uniform Trade Secrets Act, and instead maintains a common law approach to misappropriation of trade secret claims. Mot. Dismiss 13*; see also Free Country Ltd v. Drennen*, -- F. Supp. 3d --, 2016 WL 7635516, at *3 (S.D.N.Y. Dec. 30, 2016).

There are important differences between the PUTSA and New York common law, particularly concerning the definition of a trade secret and the "continuous use" requirement. *Compare* PUTSA, 12 Pa.C.S.A. § 5302 (defining a trade secret) *with Ashland Mgmt. Inc. v.*

---

[14]    This Court need not decide which law applies to claims in which no conflict of law is apparent, and generally, "if no conflict exists, [a court] may apply Pennsylvania law." *Scirex Corp. v. Fed. Ins. Co*., 313 F.3d 841, 847 (3d Cir. 2002); *see also Youtie v. Macy's Retail Holding, Inc*., 626 F. Supp. 2d 511, 520 n. 7 (E.D. Pa. 2009) (on a trade secrets claim, stating "[t]here being no conflict, I will apply the forum state's law, i.e. the PUTSA.").

*Janien*, 82 N.Y.2d 395, 407 (1993) (outlining a six-factor test for defining a trade secret); *see also* Gregory S. Bombard, *Three Key Distinctions Between Uniform Trade Secrets Act and the Common Law*, 17 Com. & Bus. Litig. No. 2, ABA Sec of Litig. (Winter 2016) ("[T]he most commonly cited distinction between the UTSA and the law[] of . . . New York is the so-called "continuous use" requirement."); *accord Sarkissian Mason, Inc. v. Enter. Holdings, Inc.*, 955 F. Supp. 2d 247, 253–54 (S.D.N.Y. 2013), *aff'd*, 572 F. App'x 19 (2d Cir. 2014) (identifying the differences between New York trade secret law and Missouri's Uniform Trade Secrets Act). I find that these differences are relevant and therefore there is an actual or real conflict between New York and Pennsylvania law on the issue of trade secrets.

### b.  True conflict

After finding an actual conflict, a court must determine if this conflict is a "true conflict." A court is tasked with "examining the governmental policies underlying each law," and a "true conflict" arises only if "*both* jurisdictions' interests would be impaired by the application of the other's laws." *Hammersmith*, 480 F.3d at 230.  A true conflict exists when the policies underlying the laws at issue are opposed to one another. *Id.* (*citing Cipolla v. Shaposka*, 439 Pa. 563 (1970)); *Rosen v. Tesoro Petroleum Corp.*, 399 Pa. Super. 226 (1990)).  Mancon, relying on the fact that the RGRTA is a public benefit corporation pursuant to New York statue, argues that "clearly" New York has an interest in the proper maintenance of the RGRTA. Mot. Dismiss 12. Mancon argues that because Neopart's claim implicates an entity created by New York statute, "there can be no question that New York has a greater interest in the outcome of this litigation than Pennsylvania." Defs.' Reply Mot. Dismiss 10.

Mancon's argument elides the choice-of-law analysis required of this Court. They compare apples to oranges. The relevant comparison is Pennsylvania's law on trade secrets and

New York's law on trade secrets, not Pennsylvania's law on trade secrets and New York's law

on public benefit corporations. Merely because Neopart's claim involves an entity that happens

to be established by New York statute does not mean that New York has a greater interest in the

application of its trade secrets law to this case. As the Pennsylvania Supreme Court has held, the

interests at stake in a choice-of law-dispute "[are] relevant only if they relate to the policies and

interest underlying the particular issue before the court." *Cipolla*, 439 Pa. at 566 (quotations

omitted). The "issue" before this Court is trade secrets. The Third Circuit requires an

examination of "the governmental policies underlying each law" that comprises the actual

conflict—here that is the PUTSA and New York's common law on misappropriation of trade

secrets. *Hammersmith*, 480 F.3d at 230.

It cannot be said that New York's interests are impaired by the application of

Pennsylvania trade secrets law to this case. Indeed, "[t]he courts in New York have recognized

the importance of trade secret protection and the resulting benefits to the public," Melvin F.

Jager, *Trade Secrets Law*, 2 Trade Secrets Law § 50:1 (October 2016). But Mancon points to no

reason that the interest underlying *trade secret law* in New York would be impaired by the

application of the PUTSA. Pennsylvania's governmental interest, however, is invoked if New

York's laws are applied. In enacting the PUTSA, Pennsylvania demonstrated a governmental

interest in according statutory protection to the trade secrets of Pennsylvania companies. As the

Third Circuit has indicated, theft of a Pennsylvania trade secret "obviously would cause harm in

Pennsylvania no matter where the misappropriation occurred." *Paolino*, 668 F.2d at 724. New

York's only connection to Neopart's claims is that the allegedly misappropriated trade secrets

were used there.[15] The conflict between New York law and Pennsylvania law with respect to this

---

[15]     Where the alleged misappropriation took place is a matter of dispute, *see* note 9, *supra*.  Disputed facts are
to be construed in Plaintiff's favor at this stage, but in any event, "choice of law doctrine ordinarily does not give

issue simply does not rise to the level of "true conflict" recognized by Pennsylvania courts. *See Cipolla*, 439 Pa. at 566  (finding a true conflict when Pennsylvania has adopted a plaintiff-protecting rule and Delaware adopted a defendant-protecting rule); *Rosen*, 399 Pa. Super. at 582 (finding a "true conflict" between Texas and Pennsylvania law where the Texas law intended to provide litigants with "open access to the judicial system," while Pennsylvania's law favored those "who may be forced to defend a baseless suit").

On the issue of trade secrets, a true conflict is not presented. This case is therefore a "false conflict" and in such a case, a court need not engage in any further choice-of-law analysis. The court applies the laws of the only interested state. *Hammersmith*, 480 F.3d at 230; *see also Lacey v. Cessna Aircraft Co.*, 932 F.2d 170, 188 (3d Cir. 1991). That state is Pennsylvania. Accordingly, Neopart's PUTSA Claims (Counts I and X) will not be dismissed.

## 2.  Conversion Claim (Count VIII)

Pennsylvania recognizes a cause of action for conversion of both trade secrets and confidential information. *Hill v. Best Med. Int'l, Inc.*, No. 07-1709, 2011 WL 5082208, at *15 (W.D. Pa. Oct. 25, 2011) ("Even after enactment of the PUTSA, courts applying Pennsylvania law have continued to recognize a separate tort of conversion regarding confidential or proprietary information."); *Am. Hearing Aid Assocs., Inc. v. GN Resound N. Am.*, 309 F. Supp. 2d 694, 705 (E.D. Pa. 2004) ("Pennsylvania law does allow for trade secrets to be the subject of a conversion claim.") (citation omitted).

New York, however, does not recognize a claim for conversion of intangible property or a claim for conversion of confidential information if the complaining party still has access to the

---

great weight to the place of injury in cases, like the case at bar, arising out of claims of misappropriation of trade values." *BP Chemicals Ltd.,* 229 F.3d at 266 n. 4. "Place of injury" in this context means where the misappropriation took place, not where the injury is felt. *Id.*

information.  *Transaero, Inc. v. Chappell*, No. 13-5752, 2014 WL 1783732 at *11 (E.D.N.Y.

May 6, 2014) ("Here, plaintiff's conversion claim fails as a matter of law because the types of

property allegedly converted—[Plaintiff's] confidential and proprietary information—'are not

amenable to claims for conversion.'") (*quoting Ferring B.V. v. Allergan, Inc*, No. 12-2650, 2014

WL 988595, at *14 (S.D.N.Y. Mar.13, 2014)); *accord Geo Grp., Inc. v. Cmty. First Servs., Inc*,

No. 11-1711, 2012 WL 1077846, at *9 (E.D.N.Y. Mar. 30, 2012).

 I find that the differences between the laws of Pennsylvania and New York on this issue

present an actual conflict, but not a "true conflict." For the reasons explained above regarding

trade secrets, New York's state interest is not impaired by applying Pennsylvania law on the

conversion of confidential information. Mancon identifies no New York policy that would be

undermined by applying Pennsylvania law to the alleged conversion of a Pennsylvania

company's information in Virginia by a Virginia company. *See* Pl.'s Resp. Mot. Dismiss 18

("Upon information and belief, Mancon received and utilized Neopart's trade secrets and other

confidential information at its principal place of business in Virginia."). Courts have recognized

that when one jurisdiction provides a protection or a claim but the other does not, allowing the

claim does not interfere with any significant interest of the jurisdiction lacking the claim. *Lacey*,

932 F.2d at 188 ("The conflict here appears to result primarily from the fact that Pennsylvania

has adopted strict liability, whereas British Columbia has not. [W]e believe that this is a false

conflict. Applying Pennsylvania law of strict liability would further Pennsylvania's interest . . .

but would not impair British Columbia's interest . . . .).

 In the absence of a true conflict, a court applies the law of the only interested

jurisdiction—in this case, Pennsylvania. Pennsylvania courts recognize a claim for conversion of

confidential information and trade secrets, *Hill*, 2011 WL 5082208, at *15, and accordingly

Count VII of Neopart's Complaint will not be dismissed.

### 3. 'Gist of the Action' Claims (Counts V, VI, VII, X)

There is no actual conflict between New York law and Pennsylvania law with respect to the 'gist of the action doctrine.' Pennsylvania courts apply the gist of the action doctrine to complaints in which the "plaintiff alleges that the defendant committed a tort in the course of carrying out a contractual agreement." *Erie Ins. Exch. v. Abbott Furnace Co.*, 972 A.2d 1232, 1238 (Pa. Super. 2009) (*citing Pa. Mfrs.' Ass'n Ins. Co. v. L.B. Smith, Inc.*, 831 A.2d 1178, 1182 (Pa. Super. 2003) (citation and quotation marks omitted)). The gist of the action doctrine prevents plaintiffs from recasting ordinary breach of contract claims as tort claims. *See Hart v. Arnold*, 884 A.2d 316, 339 (Pa. Super. Ct. 2005).[16] "[T]he important difference between contract and tort actions is that the latter lie from the breach of duties imposed as a matter of social policy while the former lie for the breach of duties imposed by mutual consensus." *Redevelopment Auth. v. Int'l Ins. Co.*, 685 A.2d 581, 590 (Pa. Super. Ct. 1996).

New York law "contains a similar doctrine, under which 'a tort cause of action generally does not lie where it is duplicative of a claim sounding in contract. However, an actionable tort may exist when the plaintiff asserts that the defendant breached a duty independent of the contract.'" *Icebox-Scoops v. Finanz St. Honore, B.V.*, 676 F. Supp. 2d 100, 112 (E.D.N.Y. 2009) (*quoting Consol. Risk Servs., Inc. v. Auto. Dealers WC Self Ins. Trust*, No. 06-871, 2007 WL 951565, at *2 (N.D.N.Y. March 27, 2007)).

When there is no actual conflict between the relevant laws, a Pennsylvania court applies Pennsylvania law. *Scirex Corp. v. Fed. Ins. Co.*, 313 F.3d 841, 847 (3d Cir. 2002). In

---

[16]     Although the gist of the action doctrine has not been formally recognized by the Pennsylvania Supreme Court, the Superior Court has noted that the Pennsylvania Supreme Court is "clearly aware of the frequent use of this doctrine by both the lower and federal courts of [Pennsylvania], but has declined at least three opportunities to put an end to its use." *Reardon v. Allegheny Coll.*, 926 A.2d 477, 486 (Pa. Super. Ct. 2007).

Pennsylvania, courts "should be slow to dismiss claims under the gist of the action doctrine. Federal civil procedure allows parties to plead multiple claims as alternative theories of liability." *Orthovita, Inc. v. Erbe*, No. 07-2395, 2008 WL 423446, at \*4 (E.D. Pa. Feb. 14, 2008); *see also Kimberton Healthcare Consulting, Inc. v. Primary PhysicianCare, Inc.*, 11-4568, 2011 WL 6046923, at \*8 (E.D. Pa. Dec. 6, 2011) ("Caution must be exercised in dismissing a tort action on a motion to dismiss because whether tort and contract claims are separate and distinct can be a factually intensive inquiry.") (citation omitted).

Neopart presents a colorable claim that the tort claims alleged against Defendants arise from duties independent of contractual obligations. Compl. ¶ 85-88; *see also Freedom Med. Inc. v. Gillespie*, 634 F. Supp. 2d 490, 517 (E.D. Pa. 2007) ("Pennsylvania law, however, imposes a common law duty on an employee not to use or disclose trade secrets obtained in the course of a confidential employment relationship."). "Viewed under the standards for deciding a motion to dismiss, these allegations adequately plead that [Defendants] had a confidential relationship with [Plaintiff], which could, depending on the facts ultimately proved, give rise to independent duties to refrain from disclosing or misappropriating trade secrets or from breaching a fiduciary duty." *Id*. Accordingly, Neopart's tort claims against the Defendants cannot be dismissed at this time under the gist of the action doctrine.

## III.    CONCLUSION

For the reasons outlined above, Defendants' Motion to Dismiss is denied.

s/Anita B. Brody

_____

ANITA B. BRODY, J.

Copies **VIA ECF** on _____ to:                    Copies **MAILED** on _____ to:

O:\ABB 2017\L - Z\NEOPART v Mancon FINAL MTD Memorandum.docx